UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED - GR
03 AUG 29 PM 2: 14
U.S. DISTRICT COURT
WESTERN DISTRICT MICH
BY

CENTURY 21 REAL ESTATE CORPORATION,

Plaintiff,

vs.

PEARSON-COOK CO., INC., TIMOTHY R. FORE, and PATTI J. FORE,

Defendants.

No. 5:03CV0091

HON. RICHARD ALAN ENSLEN

Francis R. Ortiz (P31911)
Jason P. Klingensmith (P61687)
DICKINSON WRIGHT PLLC
Attorneys for Plaintiff
500 Woodward Ave., Suite 4000
Detroit, MI 48226-3425
313/223-3500

Steven A. Goldfarb
Rose Marie Fiore
HAHN LOESER & PARKS LLP
Attorneys for Plaintiff
3300 BP Tower
200 Public Square
Cleveland, OH 44114
216/621-0150

James R. Peterson (P43102)
Richard E. Hillary, II (56092)
MILLER, JOHNSON, SNELL & CUMMISKEY, P.L.C.
Attorneys for Defendants
250 Monroe, N.W., Suite 800
P.O. Box 306
Grand Rapids, MI 49501-0306
616/831-1700

**DEFENDANTS' ANSWER AND DEFENSES**

Defendants state as follows in answer to the Complaint:

## I. PARTIES AND SUBJECT MATTER JURISDICTION

1. Plaintiff Century 21 Real Estate Corporation ("Century 21" or "Plaintiff"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One Campus Drive, Parsippany, New Jersey 07054.

**ANSWER: Upon information and belief, admitted.**

2. Upon information and belief, Defendant Pearson is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business at 601 44th Street, S.E., Grand Rapids, Michigan 49508.

**ANSWER: Admitted.**

3. Upon information and belief, Defendant Timothy R. Fore is a citizen of the State of Michigan.

**ANSWER: Admitted.**

4. Upon information and belief, Defendant Patti J. Fore, is a citizen of the State of Michigan.

**ANSWER: Admitted.**

5. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum or value of $75,000.

**ANSWER: Denied that there is any amount in controversy.**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**ANSWER: Admitted.**

## II. ALLEGATIONS COMMON TO ALL CLAIMS

7. Century 21 has the exclusive right to use and sublicense certain trade names, trademarks and service marks, including the name "CENTURY 21" which have been registered on the Principal Register in the United States Patent and Trademark Office, with other appropriate state agencies in the United States, and with governmental agencies of foreign countries.

**ANSWER: This allegation states a legal conclusion to which no response is required. To the extent that a response is required, this allegation is denied as untrue.**

8. Century 21 has developed a system for the and assistance of independently owned and operated real estate brokerage offices, including policies, procedures and techniques designed to enable such offices to compete more effectively in the real estate sales market (which system is herein after called the "CENTURY 21 System").

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation. Defendants leave Plaintiff to its proofs.**

9. From time to time, Century 21 enters into franchise agreements with persons or entities interested in using the CENTURY 21 System and certain CENTURY 21 Marks.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation. Defendants leave Plaintiff to its proofs.**

**A. The Franchise Agreements Between Century 21 and Pearson.**

10. As of the filing of this Complaint, Pearson independently owns and operates eight (8) real estate brokerage offices throughout Michigan as a franchisee of Century 21 pursuant to eight (8) Century 21® Real Estate Franchise Agreements (collectively, the "Franchise Agreements") as are more particularly described below.

**ANSWER: Admitted.**

11. Four (4) of the eight (8) Franchise Agreements by and between Century 21 and Pearson were executed by the parties on or about October 1, 1996, with respect to Pearson's offices located at the following locations:

| Franchise Number | Location |
|---|---|
| A809 | 601 - 44th Street, S.E., Grand Rapids, MI |
| A810 | 4149 Embassy Dr., S.E., Grand Rapids, MI |
| A811 | 4283 Lake Michigan Dr., N.W., Grand Rapids, MI |
| A812 | 4462 Plainfield, N.E., Grand Rapids, MI |

**ANSWER: Admitted.**

12. Each of the Franchise Agreements for the above listed locations is for a term of ten (10) years commencing on October 1, 1996 and expiring September 30, 2006. Century 21 attaches and incorporates by reference as Exhibit A the Century 21® Real Estate Franchise Agreement for franchise number A809 located at 601 44th Street, S.E., Grand Rapids, MI as a representative example of the four (4) Franchise Agreements for the offices listed above, each of which are substantially the same in all material respects, too voluminous to attach to this Complaint, and are in the possession of the Defendants. Copies of each of the four (4) Franchise Agreements for the above locations are available to the Court or the Defendants upon request.

**ANSWER: The referenced Franchise Agreements speak for themselves.**

13. On or about February 14, 1997, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 580 N. Beacon Blvd., Suite 21, Grand Haven, MI. Said Franchise Agreement, which is for a term often (10) years commencing

on February 14, 1997 and expiring September 30, 2006, is attached hereto as Exhibit B, and incorporated by reference.

**ANSWER: Admitted that Pearson entered into the referenced Franchise Agreement. The referenced Franchise Agreement speaks for itself.**

14. On or about February 28, 1997, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 735 S. Garfield Avenue, Traverse City, MI, which location was later changed to 241 E. State Street, Suite 101, Traverse City, MI. Said Franchise Agreement, which is for a term of ten (10) years commencing on February 28, 1997 and expiring September 30, 2006, is attached hereto as Exhibit C, and incorporated by reference.

**ANSWER: Admitted that Pearson entered into the referenced Franchise Agreement. The referenced Franchise Agreement speaks for itself.**

15. On or about July 1, 1999, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 325 N. St. Joseph Street, Suttons Bay, MI. Said Franchise Agreement, which is for a term of ten (10) years commencing on July 1, 1999 and expiring June 30, 2Q09, is attached hereto as Exhibit D, and incorporated by reference.

**ANSWER: Admitted that Pearson entered into the referenced Franchise Agreement. The referenced Franchise Agreement speaks for itself.**

16. On or about January 1, 2001, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 3878 M-72, Acme, MI, which location was later changed to 215 South Cedar, Kalkaska, MI. Said Franchise Agreement, which is for a term of twelve (12) years commencing on January 1, 2001 and expiring December 31, 2013, is attached hereto as Exhibit E, and incorporated by reference.

**ANSWER: Admitted that Pearson entered into the referenced Franchise Agreement. The referenced Franchise Agreement speaks for itself.**

17. The Franchise Agreements provide that should either party incur attorneys' fees in order to enforce the terms and conditions thereof, including post-term covenants, whether or not a legal action is instituted, the party not in default shall be entitled to reimbursement of such attorneys' fees and costs, in addition to any other remedies either party may have at law or in equity. The Franchise Agreements further provide that should any legal action be instituted in connection with the Franchise Agreements, the prevailing party shall be entitled to recover all costs and expenses, including attorneys' fees.

**ANSWER: The referenced Franchise Agreements speak for themselves.**

18. In approximately July 2002, there was an ownership change of Pearson, resulting in the original owners of Pearson assigning the Franchise Agreements to the current owners pursuant to eight (8) Assignment, Assumption and Release Agreements. True copies of the Assignment, Assumption and Release

Agreements are collectively attached hereto as Exhibit F and incorporated by reference.

**ANSWER: Admitted.**

**B. The Royalty Fees Due Under the Franchise Agreements.**

19. Pursuant to the provisions of the Franchise Agreements, Pearson agreed to pay Century 21 certain franchise royalty fees equal to six percent (6%) of the gross revenue earned, derived and/or received from specified transactions by Pearson and its affiliates (the "Royalty Fees").

**ANSWER: The referenced Franchise Agreements speak for themselves.**

20. Pursuant to the provisions of the Franchise Agreements, the Royalty Fees are fully earned by and payable to Century 21 immediately upon Pearson's receipt of revenue, whether in cash or other property, and are to be paid promptly.

**ANSWER: The referenced Franchise Agreements speak for themselves.**

21. Each of the Franchise Agreements provide that Royalty Fees more than ten (10) days late bear interest from the due date until paid at the lower rate of either the highest rate allowed by law or a rate that is five (5) percentage points per annum higher than the "prime rate" then currently established by Mellon Bank, N.A. Pittsburgh, PA.

**ANSWER: The referenced Franchise Agreements speak for themselves.**

22. Pearson has failed to pay Royalty Fees that have come due under the terms of each of the Franchise Agreements.

**ANSWER: Denied as untrue.**

**C. National Advertising Fund Contributions Due Under the Franchise Agreements.**

23. The Franchise Agreements also provide that, in addition to the Royalty Fees, Pearson will pay timely to Century 21 a National Advertising Fund ("NAF") contribution equal to two percent (2%) of the gross revenue earned, derived and/or received from specified transactions by Pearson and its affiliates (the "NAF Contributions").

**ANSWER: The referenced Franchise Agreements speak for themselves.**

24. Century 21 bills Pearson for the NAF Contributions on or about the tenth (10TH) day of the month following the month in which Royalty Fees were payable to Century 21 under the Franchise Agreements. If the NAF Contributions are not received by the last day of the appropriate month, Century 21 may assess a late fee equal to ten percent (10%) of the delinquent amount payable to Century 21 and/or accrue interest in favor of the NAF on the amount past due from the date due to the date paid at the lower rate of either the highest rate allowed by law or a rate that is five (5) percentage points per annum higher than the "prime rate" then currently established by Mellon Bank, N.A., Pittsburgh, PA.

**ANSWER: The referenced Franchise Agreements speaks for themselves.**

25. Pearson has failed to pay NAF Contributions that have come due under the terms of the Franchise Agreements.

**ANSWER: Denied as untrue.**

**D. The Guaranty.**

26. In connection with the Franchise Agreements, each of Defendants Timothy R. Fore and Patti J. Fore (collectively, the "Guarantors") executed a Guaranty of Payment and Performance (the "Guaranty") whereby they personally guaranteed to Century 21 any and all obligations of Pearson under the Franchise Agreements and any other agreements between Pearson and Century 21. A true and correct copy of the Guaranty is attached hereto as Exhibit G and is incorporated by reference.

**ANSWER: Admitted that the individual Defendants executed the referenced Guaranty. The referenced Guaranty speaks for itself.**

27. Pursuant to the terms of the Guaranty, each of the Guarantors agreed to, among other things, "the prompt payment and performance when due of all obligations of [Pearson] under" the Franchise Agreements, and any other agreement between Pearson and Century 21. The obligations of Pearson guaranteed by the Guarantors include, but are not limited to, the obligation to pay to Century 21 any and all Royalty Fees, NAF Contributions, amounts due on promissory notes, and attorneys' fees and costs incurred by Century 21 in enforcing the terms of the agreements between Pearson and Century 21.

**ANSWER: The referenced Guaranty speaks for itself.**

28. The Guaranty provides that the obligations of the Guarantors are absolute and unconditional obligations, and constitute a guaranty of payment and performance.

**ANSWER: The referenced Guaranty speaks for itself.**

29. Each of the Guarantors has failed to honor the terms of the Guaranty by, *inter alia*, failing or refusing to make payments to Century 21 or otherwise "cure" as required by the terms of the Guaranty.

**ANSWER: Denied as untrue.**

**E. The Promissory Notes from Pearson and the Guarantors to Century 21.**

30. From time to time, Century 21 has loaned money to Pearson and the Guarantors for, *inter alia*, expenses related to the development and expansion of new branch offices, which loans are evidenced by nine (9) promissory notes executed by Pearson and each of the Guarantors, as co-makers (the "Promissory Notes"), as is more fully alleged below.

**ANSWER: Admitted that Defendants executed the referenced Promissory Notes. The referenced Promissory Notes speak for themselves.**

31. On or about August 15, 1996, Pearson and the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $100,000 (hereinafter referred to as "Promissory Note One"). Pursuant to the terms of Promissory Note One, $10,000 of the principal amount was to be

forgiven on October 1, 1997, and on each October 1 thereafter until October 1, 2006 (i.e., for a period of ten (10) years) provided that Pearson and each of the Guarantors were not in default under the terms of any of the Franchise Agreements. A true and correct copy of Promissory Note One is attached hereto as Exhibit H and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note One." Promissory Note One speaks for itself.**

32. On or about August 21, 1996, Pearson and each of the Guarantors executed an Expansion Promissory Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $70,000 (hereinafter referred to as "Promissory Note Two"). Pursuant to the terms of Promissory Note Two, the principal and interest would be reduced annually on a dollar for dollar basis by the full amount, if any, earned by Pearson under the Century 21 Incentive Bonus Plan (as is more fully described in the Franchise Agreements) which amounts shall be applied annually as of March 15 of each year for the preceding calendar year. Any principal and interest not paid or credited pursuant to these terms and Outstanding as of October 1, 2001 was to be paid on October 1, 2001. A true and correct copy of Promissory Note Two is attached hereto as Exhibit I and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Two." Promissory Note Two speaks for itself.**

33. On or about August 23, 1996, Pearson and each of the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay to Century 21 the principal amount of $60,000 (hereinafter referred to as "Promissory Note Three"). Pursuant to the terms of Promissory Note Three, $6,000 of the principal amount was to be forgiven on October 1, 1997, and on each October 1 thereafter until October 1, 2006 (i.e., for a period of ten (10)years) provided that Pearson and each of the Guarantors were not in default under the terms of any of the Franchise Agreements. A true and correct copy of Promissory Note Three is attached hereto as Exhibit J and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Three." Promissory Note Three speaks for itself.**

34. On or about October 6, 1998, Pearson and the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $32,500 (hereinafter referred to as "Promissory Note Four"). Pursuant to the terms of Promissory Note Four, $3,250 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Four were met, including the condition that Pearson and each of the Guarantors not be in default under the terms of any of the Franchise Agreements. A true and correct

copy of Promissory Note Four is attached hereto as Exhibit K and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Four." Promissory Note Four speaks for itself.**

35. On or about September 1, 1999, Pearson and the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $49,000 (hereinafter referred to as "Promissory Note Five"). Pursuant to the terms of Promissory Note Five, $4,900 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Five were met, including the condition that Pearson and each of the Guarantors not be in default under the terms of any of the Franchise Agreements. A true and correct copy of Promissory Note Five is attached hereto as Exhibit L and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Five." Promissory Note Five speaks for itself.**

36. On or about May 16, 2000, Pearson and the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $43,250 (hereinafter referred to as "Promissory Note Six"). Pursuant to the terms of Promissory Note Six, $4,805.55 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Six were met, including the condition that Pearson and each of the Guarantors not be in

default under the terms of any of the Franchise Agreements. A true and correct copy of Promissory Note Six is attached hereto as Exhibit M and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Six." Promissory Note Six speaks for itself.**

37. On or about December 20, 2000, Pearson and the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $70,000 (hereinafter referred to as "Promissory Note Seven"). Pursuant to the terms of Promissory Note Seven, $7,777.77 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Seven were met, including the condition that Pearson and each of the Guarantors not be in default under the terms of any of the Franchise Agreements. A true and correct copy of Promissory Note Seven is attached hereto as Exhibit N and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Seven." Promissory Note Seven speaks for itself.**

38. On or about January 9, 2001, Pearson and the Guarantors executed a Development Advance Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $140,000 (hereinafter referred to as "Promissory Note Eight"). Pursuant to the terms of Promissory Note Eight, $1 5,555.55 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Eight

were met, including the condition that Pearson and each of the Guarantors not be in default under the terms of any of the Franchise Agreements. A true and correct copy of Promissory Note Eight is attached hereto as Exhibit 0 and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Eight." Promissory Note Eight speaks for itself.**

39. On or about July 31, 2002, Pearson and the Guarantors executed a Promissory Note, as co-makers, wherein Pearson and each of the Guarantors jointly and severally promised to pay Century 21 the principal amount of $239,567.42, together with accrued interest thereon at the rate of 6.75% (hereinafter referred to as "Promissory Note Nine"). Pursuant to the terms of Promissory Note Nine, principal and interest were to be paid in 25 monthly installments as follows: (a) 24 equal monthly installments of $4,000 payable on September 1, 2002 and on the 1st of each month thereafter, and (b) a balloon payment payable on September 1, 2004 of any and all amounts due and outstanding On Promissory Note Nine. A true and correct copy of Promissory Note Nine is attached hereto as Exhibit P and its terms are incorporated by reference herein.

**ANSWER: Admitted that Defendants executed the referenced "Promissory Note Nine." Promissory Note Nine speaks for itself.**

40. Each of the Promissory Notes provides, *inter alia*, that if Pearson or the Guarantors is in default of any material term of any of the Franchise Agreements or any other promissory note or debt instrument, then, upon

such default, Century 21 may accelerate the unpaid principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand.

**ANSWER: The referenced Promissory Notes speak for themselves.**

41. The Promissory Notes each provide that if the Promissory Notes are collected by or through an attorney-at-law or another third party, Century 21 shall be entitled to collect reasonable attorney's fees and all costs of collection from Pearson and/or each of the Guarantors.

**ANSWER: The referenced Promissory Notes speak for themselves.**

42. Pearson is in default of certain material terms of the Franchise Agreements because, *inter alia*, Pearson has failed to make payments as they came due for Royalty Fees and NAP Contributions.

**ANSWER: Denied as untrue.**

43. Pearson and each of the Guarantors are in default of certain material terms of the Promissory Notes because, *inter alia*, Pearson and each of the Guarantors have failed to make certain installment payments as they came due.

44. Century 21 has accelerated the amount due under each of the Promissory Notes.

**ANSWER: Denied as untrue.**

F. **The Security Agreements.**

45. From time to time, Pearson has entered into certain security agreements with Century 21 (the "Security Agreements") to secure its obligations to Century 21 under the Franchise Agreements and the Promissory Notes.

**ANSWER: Admitted that Pearson executed the referenced Security Agreements. The referenced Security Agreements speak for themselves.**

46. Pearson entered into five (5) separate security agreements with Century 21 as security for all agreements between Pearson and Century 21, including but not limited to, the Promissory Notes and the Franchise Agreements. Century 21 attaches and incorporates by reference as Exhibit Q the Security Agreement dated July 31, 2002 as a representative example of the five (5) Security Agreements, each of which are substantially the same in all material respects. Copies of each of the Security Agreements are available to the Court or the Defendants upon request.

**ANSWER: The referenced Security Agreements speak for themselves.**

47. The Security Agreements grant to Century 21 a security interest in certain collateral at a specified location as follows:

> all of the furniture, furnishings, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by [Pearson] and including the proceeds and products there from and any and all substitutions, replacements, additions, and accessions thereto and to CENTURY 21 Incentive Bonuses to which [Pearson] may be entitled pursuant

to any franchise agreement entered into with [Century 21], together with all such rights and property hereafter acquired by [Pearson].

**ANSWER: The referenced Security Agreements speak for themselves.**

48. The collateral identified in the Security Agreements will be collectively referred to as the "Collateral."

**ANSWER: The referenced Security Agreements speak for themselves.**

49. The Security Agreements provide that, *inter alia*, the following events constitute "default":

(a) the failure by Pearson to pay any amount when due under the terms and provisions of the corresponding Promissory Note; or

(b) Pearson's breach of any term, provision, warranty or representation set forth in the Security Agreement or in the respective Franchise Agreement, or in any other agreement between Pearson and Century 21.

**ANSWER: The referenced Security Agreements speak for themselves.**

50. The Security Agreements provide that in the event of a default, Century 21 may, *inter alia*, declare all obligations secured immediately due and payable and enforce the security interest.

**ANSWER: The referenced Security Agreements speak for themselves.**

51. The Security Agreements provide that in the event either party commences litigation against the other with respect to the Security

Agreements, or their interpretation or enforcement, the prevailing party shall be entitled to reasonable attorney's fees and costs.

**ANSWER: The referenced Security Agreements speak for themselves.**

52. Pearson is in default of its obligations under the terms of the Promissory Notes and the Franchise Agreements.

**ANSWER: Denied as untrue.**

53. Under the terms of the Security Agreements, Century 21 is entitled to immediate possession of the Collateral.

**ANSWER: The referenced Security Agreements speak for themselves.**

## III. CENTURY 21'S CLAIMS AGAINST THE DEFENDANTS

### FIRST CLAIM FOR RELIEF
**(Breach of Contract: Franchise Agreements and Promissory Notes)**

54. Century 21 repeats and makes a part hereof each and every allegation set forth in paragraphs I through 53 of the Complaint.

**ANSWER: Defendants restate their previous responses.**

55. By letter dated March 11, 2003, Century 21 notified each of the Guarantors and Pearson that (1) Pearson was substantially in arrears in transmitting payment to Century 21 in connection with the Royalty Fees and NAF Contributions, and that (2) Pearson and each of the Guarantors are substantially in arrears in transmitting to Century 21 installments due under the various Promissory Notes. Century 21 notified each of the Guarantors and Pearson that the

on going failure to report and transmit payment constitutes a breach of the applicable Franchise Agreements. Century 21 made demand for payment of outstanding balances. A true and correct copy of the March 11, 2003 demand letter is attached hereto and incorporated by reference as Exhibit R.

**ANSWER: The referenced letter speaks for itself.**

56. Pearson and each of the Guarantors failed or refused to make payment as demanded by Century 21.

**ANSWER: Denied as untrue.**

57. Pearson and each of the Guarantors failed or refused to make payment under the terms of the Franchise Agreements and Promissory Notes as demanded by Century 21.

**ANSWER: Denied as untrue.**

58. Century 21 has incurred and will continue to incur attorney's fees and other related costs in connection with, *inter alia*, enforcing the terms and conditions of the Franchise Agreements and collecting on the Promissory Notes.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

59. Pearson has breached and is in default of obligations due and owing to Century 21 under the terms and conditions of the Franchise Agreements and Promissory Notes because, *inter alia*, Pearson has failed to pay amounts due to Century 21.

**ANSWER: Denied as untrue.**

60. Each of the Guarantors has breached and is in default of obligations due and owing to Century 21 under the terms and conditions of the Promissory Notes because, inter alia, each of the Guarantors has failed to pay amounts due to Century 21.

**ANSWER: Denied as untrue.**

61. Pearson's and each of the Guarantors' breaches of contract have directly and proximately caused Century 21 to suffer damages.

**ANSWER: Denied as untrue.**

62. As of the filing of this Complaint, there was due and owing to Century 21 from Defendants, a sum to be proved at trial, but which is in excess of Eight Hundred Fifty Six Thousand Dollars ($856,000), plus interest, late charges, attorneys' fees and other costs.

**ANSWER: Denied as untrue.**

63. At this time, Century 21 is not terminating the Franchise Agreements. Century 21's decision not to terminate the Franchise Agreements at this time shall not operate as a waiver of Century 21's right to terminate the Franchise Agreements in accordance with their terms based upon the current defaults or any future defaults.

**ANSWER: This allegation states a legal conclusion to which no response is required.**

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract: Guaranty)**

64. Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 63 of the Complaint.

**ANSWER: Defendants incorporate their previous responses.**

65. Each of the Guarantors has failed or refused to make payments under the Guaranty as demanded by Century 21.

**ANSWER: Denied as untrue.**

66. Each of the Guarantors has breached and is in default of obligations due and owing to Century 21 under the terms and conditions of the Guaranty because, inter alia, each of the Guarantors has failed to pay amounts due to Century 21.

**ANSWER: Denied as untrue.**

67. Each of the Guarantors' breaches of contract have directly and proximately caused Century 21 to suffer damages.

**ANSWER: Denied as untrue.**

68. As of the filing of this Complaint, there is due and owing to Century 21 from each of the Guarantors, a sum to be proved at trial, but which is not less than Eight Hundred Fifty Six Thousand Dollars ($856,000), plus interest, late charges, attorneys' fees and other costs.

**ANSWER: Denied as untrue.**

**THIRD CLAIM FOR RELIEF**
**(Accounting)**

69. Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 68 of the Complaint.

**ANSWER: Defendants restate their previous responses.**

70. Pursuant to Section II.C(iv) of the Franchise Agreements, Pearson agreed to allow Century 21 to examine, audit, and make copies of Pearson's financial information, including books, tax returns and records, to determine whether all revenue received by Pearson has been properly reported by Pearson, that appropriate fees and contributions have been paid, and that the obligations of Pearson under the Franchise Agreements have been complied with.

**ANSWER: The referenced Franchise Agreements speak for themselves.**

71. Certain amounts due to Century 21 under the Franchise Agreements are unknown to Century 21, and cannot be ascertained without an accounting of Pearson's financial information so that Century 21 can determine whether all revenue received by Pearson has been properly reported by Pearson, that appropriate fees and contributions have been paid, and that the obligations of Pearson under the Franchise Agreements have been complied with.

**ANSWER: Denied as untrue.**

**FOURTH CLAIM FOR RELIEF**
**(Claim and Delivery)**

72. Century 21 repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 71 of the Complaint.

**ANSWER: Defendants restate their previous responses.**

73. Pursuant to the Security Agreements, Pearson granted Century 21 a security interest in the Collateral.

**ANSWER: The referenced Security Agreements speak for themselves.**

74. The interest granted to Century 21 by the Security Agreements is a properly perfected security interest in the Collateral by virtue of a financing statement filed with the Michigan Department of State.

**ANSWER: This allegation states a conclusion of law to which no response is required.**

75. Due to Pearson's default under the terms of the Franchise Agreements and the Promissory Notes, Century 21 is entitled to immediate possession of the Collateral.

**ANSWER: Denied as untrue.**

76. Pearson's continued possession of the Collateral constitutes an unlawful detention within the meaning of MCR 3.105(A)(1) and MCLA 600.2920; MSA 27.2920.

**ANSWER: This allegation states a legal conclusion to which no response is required. To the extent that a response is required, this allegation is denied as untrue.**

77. Upon information and belief, none of the Collateral is under custody of law by virtue of a warrant for the collection of any tax, fine, judgment or execution.

**ANSWER: This allegation states a legal conclusion to which no response is required.**

78. Century 21 does not have enough information at this time to estimate the value of the Collateral.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation.**

79. Century 21 is, and will continue to be, injured by Pearson's wrongful possession and detention of the Collateral.

**ANSWER: Denied as untrue.**

80. Pursuant to the terms of the Security Agreements, Century 21 is entitled to recover from Pearson all costs, attorneys' fees and expenses incurred in enforcing the terms of the Security Agreements and recovering the Collateral.

**ANSWER: The referenced Security Agreements speak for themselves.**

**AFFIRMATIVE AND OTHER DEFENSES**

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation.

3. Plaintiff has failed to mitigate its damages or, alternatively, it has mitigated its damages in full.

4. Plaintiff's claims are barred by the applicable statutes of fraud.

5. Plaintiff's claims are barred by the doctrine of unclean hands.

6. Plaintiff's claims are barred by the doctrine of estoppel.

7. Defendants reserve the right to supplement these Affirmative and Other Defenses.

MILLER, JOHNSON, SNELL & CUMMISKEY, P.L.C.
Attorneys for Defendants

Dated: August 29, 2003

By [signature]
James R. Peterson (P43102)
Richard E. Hillary, II (P56092)

Business Address:
250 Monroe Avenue, N.W., Suite 800
PO Box 306
Grand Rapids, Michigan 49501-0306
Telephone: (616) 831-1700