UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTURY 21 REAL ESTATE
CORPORATION,

        Plaintiff,

vs.

PEARSON-COOK CO., INC.,
TIMOTHY R. FORE, and
PATTI J. FORE,

        Defendants.

Case No. 5:03 CV 0091

Hon. Ellen S. Carmody

_____/

DICKINSON WRIGHT PLLC
Jason P. Klingensmith (P61687)
Frank A. Hamidi (P57713)
Attorneys for Plaintiff
500 Woodward Ave.
Suite 4000
Detroit, Michigan 48226-3425
(313) 223-3500

_____/

**PLAINTIFF CENTURY 21 REAL ESTATE, LLC'S
BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
<u>ORDER, PRELIMINARY INJUNCTION AND APPOINTMENT OF RECEIVER</u>**

## I.   INTRODUCTION

Defendants Pearson-Cook Co., Inc., d/b/a Century 21 Pearson-Cook ("Pearson-Cook"), Timothy R. Fore and Patti Jo Fore (the "Fores") (collectively, "Defendants") are currently indebted, jointly and severally, to Plaintiff Century 21 Real Estate, LLC, f/k/a Century 21 Real Estate Corporation ("Century 21") in an amount not less than $617,986.35 under an Amended Consent Judgment entered by this Court on December 29, 2005.  For nearly a year, Defendants induced Century 21 to refrain from fully executing on the Amended Consent Judgment and from terminating Pearson-Cook as a Century 21 franchisee on the promise of continued good faith negotiations directed at satisfying the Amended Consent Judgment.  During that time, Defendants used Pearson-Cook's status as a Century 21 franchisee to earn additional profit, but failed to satisfy any portion of the Amended Consent Judgment.

Then, on November 3, 2006, without advance notice to Century 21, Defendants issued a press release announcing that they are "closing out existing transactions," after which they will cease operations, close the eight (8) Century 21 offices which they operate (in Grand Rapids, Traverse City, Grand Haven, Suttons Bay and Kalkaska), dissolve Pearson-Cook as a corporate entity and "just go away."  Incredibly, Defendants' press release also states that an individual who is not a Century 21 franchisee will operate Defendants' Traverse City and Suttons Bay offices "as Century 21 franchises."

Defendants' press release also indicates that the Fores will replace Pearson-Cook with a new real estate business, the Platinum Realty Group ("Platinum") that will sub-lease the building currently occupied by Pearson-Cook in Grand Rapids and obtain some or all of Pearson-Cook's assets, including but not limited to Pearson-Cook's real estate listings, listing agreements and tangible assets, all of which are subject to a security interest possessed by Century 21 and are, in essence, owned by Century 21.

On November 8, 2006, Century 21 obtained a memorandum apparently distributed by Defendants to their employees in Defendants' four (4) Grand Rapids offices on November 1, 2006. In this memorandum, the Fores announce the closing of offices and they solicit their brokers to join them at Platinum. In addition, the memorandum makes clear that Defendants intend to transfer Pearson-Cook's current real estate listings to Platinum, as the Fores state that they will "expire all of your current listings so they can be relisted with your new broker." Finally, the memorandum reiterates that Pearson-Cook's Traverse City and Suttons Bay offices "will remain open under the ownership" of an individual who is not a licensed Century 21 franchisee.

Defendants' press release and memorandum make clear that the Fores and Pearson-Cook intend on: (1) transferring and absconding with assets, (2) dissolving Pearson-Cook and ceasing its operation, (3) establishing a competing real estate business by soliciting Century 21 brokers and taking Century 21 listings, and (4) avoiding satisfaction of the Amended Consent Judgment.

Century 21 will suffer irreparable harm for which there is no adequate legal remedy if Defendants are permitted to engage in their intended unlawful conduct and avoid satisfaction of the Amended Consent Judgment. Accordingly, pursuant to Fed.R.Civ.P. 65 and 69, and M.C.L. § 600.6104 and M.C.R. 2.622, the Court should enter a temporary restraining order and preliminary injunction: (1) prohibiting Defendants from transferring any of their assets, including but not limited to any of Pearson-Cook's real estate listings, listing agreements and tangible assets, to any third-party, including but not limited to Platinum, (2) prohibiting any third-party to whom Defendants have already transferred assets from realizing upon or disposing of any such assets, including but not limited to real estate listings, listing agreements and/or tangible assets, and (3) requiring Defendants and any third-party, including but not limited to

2

Platinum, to pay into the Court's Registry, for eventual distribution to Century 21, all proceeds and revenues earned or derived from real estate transactions that close after being listed, at any time, by Pearson-Cook.

In addition, and also pursuant to Fed.R.Civ.P. 65 and 69, and M.C.L. § 600.6104 and M.C.R. 2.622, the Court should appoint a receiver over Defendants' assets and Pearson-Cook's business in order to: (a) transact Pearson-Cook's remaining business, (b) ensure that Defendants do not transfer any of their assets to third-parties, (c) ensure that third-parties do not realize upon or dispose of any assets already transferred to them by Defendants, (d) wind-up Pearson-Cook's operations and oversee its dissolution, and (e) otherwise maximize the funds available to satisfy the Court's Amended Consent Judgment and the claims of other creditors.

## II.     STATEMENT OF FACTS

### A.     The Parties

Century 21 is a national real estate organization with its principal place of business in Parsippany, New Jersey. *See*, Affidavit of Debbie Iuliano, Century 21's Vice President of Operations, attached hereto as Exhibit A at ¶ 3. Until November 9, 2006, Pearson-Cook was a franchisee of Century 21 and was licensed to use the Century 21® trade name at eight (8) real estate brokerage offices pursuant to eight (8) franchise agreements (the "Franchise Agreements"). *Id*., ¶ 4.[1] Mr. and Mrs. Fore are each 50% shareholders of Pearson-Cook, and, as demonstrated below, they are each jointly and severally liable for all of Pearson-Cook's financial obligations to Century 21. *Id*.

---

[1]   On November 9, 2006, Century 21 terminated Pearson-Cook as a Century 21 franchisee as a result of (among others) Pearson-Cook's numerous breaches of the Franchise Agreements and Pearson-Cook's notices of its intent to dissolve and abandon its business. *Id.*, ¶ 4.

3

### B. Procedural History

On July 3, 2003, Century 21 filed the above-captioned lawsuit against Defendants seeking damages as a result of Defendants' breach of eight franchise agreements. *See*, Complaint. On June 4, 2004, Century 21 and Defendants entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement") in an effort to resolve this lawsuit.[2] In addition:

(1) Defendants executed an Expansion Promissory Note in the amount of $572,256.58, pursuant to which Defendants became obligated to pay Century 21 $572,256.58 (the "Initial Settlement Note"). A copy of the Initial Settlement Note is attached hereto as <u>Exhibit B</u>;

(2) Century 21 and Defendants executed a Consent Judgment (the "Initial Consent Judgment") in the amount of $572,256.58 to be entered in the event Defendants defaulted under the Initial Settlement Note;

(3) Defendants executed a Security Agreement providing Century 21 with a security interest in all of Pearson-Cook's "furniture, furnishings, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by [Pearson-Cook] and including the proceeds and products therefrom". A copy of the Security Agreement is attached hereto as <u>Exhibit C</u>.

(4) Century 21 and Defendants executed and had entered by the Court a Stipulated Order of Dismissal With Prejudice which was subject to all of the terms and conditions of the Settlement Agreement and pursuant to which the Court would retain jurisdiction over this case for the purpose of enforcing all of the terms and provisions of the Settlement Agreement. *See*, May 24, 2005 Stipulation and Order of Dismissal with Prejudice.

On July 21, 2004, Century 21 advised this Court that Defendants had defaulted under the terms of the Settlement Agreement and Initial Settlement Note. *See*, July 21, 2004 letter,

---

[2] The Settlement Agreement contains a confidentiality provision precluding disclosure of the terms of the Settlement Agreement and requiring that the Settlement Agreement be filed under seal. Accordingly, Century 21 has not attached a copy of the Settlement Agreement to this Motion. However, Century 21 will produce a copy of the Settlement Agreement for the Court's *in camera* review should the Court wish to review the Settlement Agreement.

4

attached hereto as <u>Exhibit D</u>.  Accordingly, on July 22, 2004 the Court entered the Initial Consent Judgment in favor of Century 21 and against Defendants, jointly and severally, in the amount of $572,256.58.  *See*, July 22, 2004 Consent Judgment.

In order to induce Century 21 to refrain from executing on the Initial Consent Judgment and terminating Pearson-Cook as a Century 21 franchisee, Defendants offered to engage in continued negotiations directed at paying off the Initial Consent Judgment.  *See*, Exhibit A at ¶ 5.  Ultimately, on September 20, 2004, the parties reached an agreement and memorialized such agreement in a Second Addendum to Settlement Agreement and Mutual Release (the "Second Addendum").[3]  In addition:

(1) Century 21 and Defendants executed an Amended Expansion Promissory Note ("Amended Settlement Note") in the amount of $544,487,00, pursuant to which Defendants became obligated to pay Century 21 $544,487.00.  A copy of the Amended Note is attached hereto as <u>Exhibit E</u>; and

(2) Century 21 and Defendants executed an Amended Consent Judgment in the amount of $544,487.00 to be entered by the Court in the event Defendants defaulted under the Amended Settlement Note.

Defendants, however, failed to make a single payment under the Amended Settlement Note and thus defaulted under the terms of the Second Addendum and Amended Settlement Note.  *See*, Exhibit A, at ¶ 6.  On December 21, 2005, Century 21 advised the Court of these defaults.  *See*, December 21, 2005 Letter, attached hereto as <u>Exhibit F</u>.  Accordingly, on December 29, 2005, the Court entered the Amended Consent Judgment in favor of Century 21, and against Defendants, jointly and severally, in the amount of $544,487.00.  *See*, December 29, 2005 Amended Consent Judgment.  On January 11, 2006, the Court entered an Order allowing

---

[3] The Second Addendum is governed by the Settlement Agreement's confidentiality provision. Century 21 will produce the Second Addendum for *in camera* review by the Court if the Court wishes to review the Second Addendum.

5

Defendants' counsel to withdraw from representing Defendants in this case. *See*, January 11, 2006 Order.

### C. Defendants Induce Century 21 To Refrain From Fully Executing On The Amended Consent Judgment And Terminating Pearson-Cook As A Century 21 Franchisee, Then Issue Their Press Release Without Notice To Century 21

As a result of Defendants' defaults and the entry of the Amended Consent Judgment, Century 21 initiated collection efforts against Defendants in June 2006, including the service of writs of garnishment and execution. In July 2006, Century 21 successfully garnished $4,173.80 from bank accounts owned by the Fores. *See*, Garnishee Disclosures, attached hereto as Exhibit G. In response, Defendants again requested that Century 21 refrain from collecting the Amended Consent Judgment. This time, Defendants advised Century 21 that they had obtained an investor who would provide a cash infusion to Defendants sufficient to satisfy the Amended Consent Judgment. *See*, June 30, 2006 e-mail, attached hereto as Exhibit H. On the basis of this representation, Century 21 agreed to refrain from terminating Pearson-Cook as a Century 21 franchisee, and to refrain from collecting on the Amended Consent Judgment. *Id*.

Ultimately, Century 21 provided Defendants with an extension of time, through and including October 31, 2006, to provide Century with a firm plan to satisfy the Amended Consent Judgment. *See*, September 28, 2006 e-mail and September 29, 2006 letter, attached hereto collectively as Exhibit I. Despite repeated assurances that a firm proposal would be forthcoming, Defendants failed to provide Century 21 with any such proposal.

Instead, on November 3, 2006, Defendants, without advance notice to Century 21, issued a press release stating that they are "closing out existing transactions," after which they will cease operations, close the eight (8) Century 21 offices which they currently operate (in Grand Rapids, Traverse City, Grand Haven, Suttons Bay and Kalkaska), dissolve Pearson-Cook as a

6

corporate entity and "just go away." *See*, Press Release, attached hereto as <u>Exhibit J</u>. Incredibly, Defendants' press release also states that an individual who is not a Century 21 franchisee will operate Defendants' Traverse City and Suttons Bay offices "as Century 21 franchises."

Defendants' press release also indicates that the Fores will replace Pearson-Cook with a new real estate business, the Platinum Realty Group ("Platinum") that will sub-lease the building currently occupied by Pearson-Cook in Grand Rapids and obtain some or all of Pearson-Cook's assets, including but not limited to Pearson-Cook's real estate listings, listing agreements and tangible assets, all of which are subject to a security interest possessed by Century 21. *See*, Exhibit C.

On November 8, 2006, Century 21 obtained a memorandum apparently distributed by the Defendants to their employees in Defendants' four (4) Grand Rapids offices on November 1, 2006. A copy of the Memorandum is attached hereto as <u>Exhibit K</u>. In the Memorandum, the Fores announce the closing of offices and they solicit their brokers to join them at Platinum. *Id*. In addition, the Memorandum makes clear that Defendants intend to transfer Pearson-Cook's current real estate listings to Platinum, as the Fores state that they will "expire all of your current listings so they can be relisted with your new broker." *Id*. Finally, the Memorandum reiterates that Pearson-Cook's Traverse City and Suttons Bay offices "will remain open under the ownership" of an individual who is not a licensed Century 21 franchisee. *Id*.

Century 21 will suffer irreparable harm for which there is no adequate legal remedy if Defendants are permitted to engage in their intended unlawful conduct and avoid satisfaction of the Amended Consent Judgment. Accordingly, pursuant to Fed.R.Civ.P. 65 and 69, and M.C.L. § 600.6104 and M.C.R. 2.622, the Court should enter a temporary restraining order and preliminary injunction: (1) prohibiting Defendants from transferring any of their assets,

including but not limited to any of Pearson-Cook's real estate listings, listing agreements and tangible assets, to any third-party, including but not limited to Platinum, (2) prohibiting any third-party to whom Defendants have already transferred assets from realizing upon or disposing of any such assets, including but not limited to real estate listings, listing agreements and/or tangible assets, and (3) requiring Defendants and any third-party, including but not limited to Platinum, to pay into the Court's Registry, for eventual distribution to Century 21, all proceeds and revenues earned or derived from real estate transactions that close after being listed, at any time, by Pearson-Cook.

In addition, and also pursuant to Fed.R.Civ.P. 65 and 69, and M.C.L. § 600.6104 and M.C.R. 2.622, the Court should appoint a receiver over Defendants' assets and Pearson-Cook's business in order to: (a) transact Pearson-Cook's remaining business, (b) ensure that Defendants do not transfer any of their assets to third-parties, (c) ensure that third-parties do not realize upon or dispose of any assets already transferred to them by Defendants, (d) wind-up Pearson-Cook's operations and oversee its dissolution, and (e) otherwise maximize the funds available to satisfy the Court's Amended Consent Judgment and the claims of other creditors.

### III. LAW AND ARGUMENT

#### A. Century 21 Is Entitled To A Temporary Restraining Order And Preliminary Injunction

Under Federal Rule of Civil Procedure 69(a), the procedure in proceedings, such as this, that are supplementary to and in aid of execution upon a judgment, are governed by "the practice and procedure of the state in which the district court is held." *See*, Fed.R.Civ.P. 69(a) ("The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held"); *Mosaica Advantage Inc. v. Detroit Advantage*

8

*Academy, Inc.*, No. 04-CV-40374-FL, 2006 WL 1234892 at *2 (E.D. Mich. May 5, 2006) (attached hereto as <u>Exhibit L</u>) (same). Thus, the procedure pursuant to which Century 21 may execute on the Amended Consent Judgment is governed by Michigan law. *Id.*

Michigan law provides its Courts (both State and Federal) with "extremely broad authorization to aid in execution on their judgments". *Rogers v. Webster*, 779 F.2d 52; 1985 WL 13788 (6th Cir. Oct. 22, 1985) (attached hereto as <u>Exhibit M</u>). *See also*, *In re John Richards Homes Building Co.*, 298 B.R. 591, 609 (E.D. Mich. Bankr. 2003) (same). This authorization is codified by M.C.L. § 600.6104, which provides as follows:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> (1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;
>
> (2) **Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor**;
>
> (3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;
>
> (4) **Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and**
>
> (5) **Make any order as within [its] discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.**
>
> The court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment. It is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced.

M.C.L. § 600.6104 (emphasis added).

9

As this Court has noted, M.C.L. § 600.6104 reflects the fact that "[i]t would be fundamentally unfair to issue such a judgment and permit it to be undermined by collection avoidance." *U.S. ex rel. Scott v. Metropolitan Health Corp.*, No. 1:02-CV-485, 2005 WL 3434830 at *12 (W.D. Mich. Dec. 13, 2005) (attached hereto as <u>Exhibit N</u>). In furtherance of this policy objective, the Sixth Circuit and Michigan's federal District Courts have made clear that M.C.L. § 600.6104 authorizes a federal District Court sitting in Michigan to enjoin a judgment debtor from transferring its assets, and also permits the District Court to issue such other orders as the Court deems appropriate to cause any nonexempt assets of the debtor to be applied to the satisfaction of the judgment. *See*, *Rogers*, 1985 WL 13788 at *1-2; *Mosaica*, 2006 WL 1234892 at *1-2; *Metropolitan Health Corp.*, 2005 WL 3434830 at *11-12; *John Richards Homes Building Co.*, 298 B.R. at 609..

In *Rogers*, the Sixth Circuit affirmed the District Court's order: (1) restraining the judgment debtor from disposing of his stock, (2) requiring him to deliver his stock certificates to the clerk of the District Court for eventual sale to satisfy the judgment, and (3) appointing a receiver over the debtor's assets and directing the debtor to deliver to the receiver all income or property he might thereafter possess, receive or control. *Id*. Century 21 seeks, and is entitled to, nearly identical relief.

First, the Court should enjoin Defendants from transferring any of their nonexempt property, including but not limited to real estate listings, listing agreements and tangible assets, to any third-party, including but not limited to Platinum and/or any of its principals. The Court should also prohibit any third-party to whom Defendants have already transferred assets from realizing upon or disposing of such assets. For nearly a year, Defendants have induced Century 21 to refrain from exercising its collection remedies against Defendants while Defendants

10

continued to operate, and earn profit, as a Century 21 franchisee.  To allow Defendants to shut down operations, transfer assets and "simply go away," leaving over $617,986.35 owing on the Amended Consent Judgment would not only be "fundamentally unfair," but also would cause Century 21 to suffer immediate and irreparable harm for which there is no adequate remedy at law.  Indeed, as this Court has noted:

> "It would be fundamentally unfair to issue such a judgment and permit it to be undermined by collection avoidance.  There is no adequate remedy at law if [the debtor] is permitted to obtain the monies and then transfer those monies to the form of exempt assets; such collection avoidance would impose upon [the creditors], at the very least, the substantial costs of attempting to vacate such transactions and may as a practical matter defeat any attempt to obtain those monies.  Finally, there is a real and imminent danger of such harm."

*Metropolitan Health Care Corp.*, 2005 WL 3434830 at *11-12.

Second, as in *Rogers, supra*, the Court should require Defendants to pay into the Court's Registry, for eventual distribution to Century 21, all proceeds and revenues earned or derived from real estate transactions that close after being listed, at any time, by Pearson-Cook.  Likewise, the Court should require any third-party, including but not limited to Platinum, to whom Defendants have already transferred real estate listings, to pay into the Court's Registry, for eventual distribution to Century 21, all proceeds and revenues earned or derived by them as a result of closed real estate transactions resulting from the transferred listings.

Simply put, Defendants currently owe Century 21 $617,986.35 under the Amended Consent Judgment.[4]  In addition, Century 21 possesses a security interest in all of Pearson-Cook's "furniture, furnishings, equipment, **real estate listings and listing agreements** and related rights which are located at or related to the residential real estate brokerage business

---

[4] In addition to the outstanding amount of the Amended Consent Judgment, Defendants have become further indebted to Century 21 in an amount greater than an additional $700,000 for unpaid royalties, fees and other amounts that have become due since the Court entered the Amended Consent Judgment.  *See*, Exhibit A, ¶ 7.

11

conducted by [Pearson-Cook] and **including the proceeds and products therefrom**". *See*, Exhibit C (emphasis added). The law contemplates Court action, such as that requested by Century 21 in this Motion, to assist the collection of this Judgment. Moreover, Defendants will not suffer any harm as a result of the temporary restraining order and injunction requested by Century 21. Instead, the relief requested by Century 21 will simply ensure that Defendants comply with their legal obligations, and it will prevent Defendants from committing additional wrongs, such as engaging in fraudulent transfers under M.C.L. § 566.31 *et seq*.

Accordingly, the Court should require Defendants and third-parties to pay into Court, for eventual distribution to Century 21, all proceeds and revenues earned or derived from real estate transactions that close after being listed, at any time, by Pearson-Cook.

    **B.    The Court Should Appoint A Receiver To Transact Pearson-Cook's Remaining Business, Ensure That Defendants Do Not Transfer Assets, Ensure That Third-Parties Do Not Dispose Of Assets Already Transferred To Them, And To Wind-Down Pearson's Operations**

Finally, as in *Rogers*, the Court should appoint a receiver over the assets of Pearson-Cook and Defendants to: (1) transact Pearson-Cook's remaining business, (2) ensure that Defendants do not transfer any of their assets to third-parties, (3) ensure that third-parties do not realize upon or dispose of any assets already transferred to them by Defendants (4) wind-up Pearson-Cook's operations and oversee its dissolution, and (5) otherwise maximize the funds available to satisfy the Amended Consent Judgment and the claims of other creditors.

Under M.C.L. § 600.6104(4) and M.C.R. 2,622, the Court has the express authority to "[a]ppoint a receiver of any property the judgment debtor has or may thereafter acquire". *See also*, *Rogers*, 1985 WL 13788 at *1-2; *Metropolitan Health Care Corp.*, 2005 WL 3434830 at *12 n.21; *Attica Hydraulic Exchange v. Selsar*, 264 Mich. App. 577, 590-591; 691 N.W.2d 802 (2004) (same). The primary purpose of a receiver is to preserve property and dispose of it under

the order of the Court. *Petipren v. Taylor School Dist.*, 104 Mich. App. 283, 292-296 (1981); *Reed v. Reed*, 265 Mich. App. 131, 161 (2005). Thus, the Michigan Supreme Court has long recognized, particularly in the creditor/debtor context, that a receiver should be appointed where necessary to prevent fraud or to protect property against imminent danger of waste or loss. *See*, *Equitable Trust Co v. Westman*, 264 Mich. 26 (1933) *Nusbaum v. Shapero*, 249 Mich. 252 (1930). Such waste includes "[a]nything that tends to destroy the [creditor's] security". *Nusbaum*, supra at 263-264.

Defendants have stated that they intend to "close out existing transactions" after which they will cease operations, close their offices and "just go away." *See*, Exhibit I. Defendants, however, may not do so in light of the fact that they owe Century 21 over $617,986.35 617 under the Amended Consent Judgment. Instead, under M.C.L. § 600.6104(4) and (5), this Court may, and should, appoint a receiver to: (1) transact Pearson-Cook's remaining business, (2) ensure that Defendants do not transfer any of their assets to third-parties, (3) ensure that third-parties do not realize upon or dispose of any assets already transferred to them by Defendants (4) wind-up Pearson-Cook's operations and oversee its dissolution, and (5) otherwise maximize the funds available to satisfy the Amended Consent Judgment and the claims of other creditors.

Defendants will not suffer any injury or prejudice as a result of the appointment of a receiver. To the contrary, a receiver will serve to mitigate Defendants' liability to Century 21 by reducing the outstanding amount of the Amended Consent Judgment. In addition, and a receiver will help ensure that Defendants do not engage in fraudulent transfers and that Pearson-Cook's dissolution takes place in conformance with the Michigan Business Corporation Act ("MBCA"), M.C.L. § 450.1101 *et seq*. Indeed, the MBCA contemplates the appointment of a receiver to assist in the dissolution of a corporation. *See*, M.C.L. § 450.1851.

Accordingly, under the express authority provided to it by M.C.L. § 600.6104(4), the Court should appoint a receiver over the assets of Pearson-Cook and Defendants to: (1) transact Pearson-Cook's remaining business, (2) ensure that Defendants do not transfer any of their assets to third-parties, (3) ensure that third-parties do not realize or dispose of any assets already transferred to them by Defendants (4) wind-up Pearson-Cook's operations and oversee its dissolution, and (5) otherwise maximize the funds available to satisfy the Amended Consent Judgment and the claims of other creditors

### IV.   CONCLUSION

For the foregoing reasons, and pursuant to Fed.R.Civ.P. 65 and 69, and M.C.L. § 600.6104 and M.C.R. 2.622, Century 21 respectfully requests that the Court grant its Motion and enter a temporary restraining order and preliminary injunction: (1) prohibiting Defendants from transferring any of their assets, including but not limited to any of Pearson-Cook's real estate listings, listing agreements and tangible assets, to any third-party, including but not limited to Platinum, (2) prohibiting any third-party to whom Defendants have already transferred assets from realizing upon or disposing of any such assets, including but not limited to real estate listings, listing agreements and/or tangible assets, and (3) requiring Defendants and any third-party, including but not limited to Platinum, to pay into the Court's Registry, for eventual distribution to Century 21, all proceeds and revenues earned or derived from real estate transactions that close after being listed, at any time, by Pearson-Cook.

In addition, and also pursuant to Fed.R.Civ.P. 65 and 69, and M.C.L. § 600.6104 and M.C.R. 2.622, the Court should appoint a receiver over Defendants' assets and Pearson-Cook's business in order to: (a) transact Pearson-Cook's remaining business, (b) ensure that Defendants do not transfer any of their assets to third-parties, (c) ensure that third-parties do not realize upon or dispose of any assets already transferred to them by Defendants, (d) wind-up Pearson-Cook's

14

operations and oversee its dissolution, and (e) otherwise maximize the funds available to satisfy the Court's Amended Consent Judgment and the claims of other creditors.

A proposed Temporary Restraining Order is attached hereto for the Court's convenience as Exhibit O.

> Respectfully submitted,
>
> DICKINSON WRIGHT PLLC
>
> By: /s/ Jason P. Klingensmith (P61687)
>       Jason P. Klingensmith (P61687)
>       Frank A. Hamidi (P57713)
> Attorneys for Plaintiff
> Century 21 Real Estate, LLC
> 500 Woodward Avenue, Suite 4000
> Detroit, Michigan  48226-3425
> (313) 223-3500
> jklingensmith@dickinson-wright.com
> fhamidi@dickinson-wright.com

November 9, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a true a correct copy of the foregoing was served upon counsel of record by CM/ECF on November 9, 2006.

> By: /s/ Jason P. Klingensmith (P61687)
>       Jason P. Klingensmith (P61687)
> Attorneys for Plaintiff
> Century 21 Real Estate, LLC
> 500 Woodward Avenue, Suite 4000
> Detroit, Michigan  48226-3425
> (313) 223-3500
> jklingensmith@dickinson-wright.com

DETROIT 26716-5 963109v1

15